# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-KA-00495-SCT

*FREDERICK L. WILSON a/k/a FREDRICK L.*
*WILSON a/k/a FREDRICK WILSON a/k/a*
*FREDERICK WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/12/2009 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ELLIOTT FLAGGS |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/19/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., LAMAR AND KITCHENS, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     Frederick Wilson wounded Shamika Parker and killed Josh Ingram when he fired gunshots at Josh Ingram's car.  He was convicted of one count of aggravated assault and one count of murder.  Wilson appeals from his convictions, alleging the trial court erred 1) by sustaining the State's relevance objections during his cross-examination of Shamika Parker and 2) by admitting into evidence his first two statements to law-enforcement authorities. Finding no reversible error, we affirm Wilson's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2.    On March 24, 2008, Frederick Wilson drove to the Parker residence and confronted Shamika Parker's boyfriend, Josh Ingram, about impregnating his niece. Wilson and Ingram got into a fist fight. Parker and her mother testified that Ingram did not have a gun during the fight and that Wilson hit Ingram with a pipe. Wilson denied using a pipe and claimed that Ingram pointed a gun and threatened to kill him. Shortly after Parker's parents broke up the fight, Wilson ran into his friend Justin Wash at a nearby gas station. Wilson told Wash about the fight and asked Wash to drive him back to the Parker residence so he could scare Ingram. Wash agreed. After Wash dropped him off, Wilson walked with his shotgun to a brick pile behind the Parker residence and fired multiple shots at the back of Ingram's car, in which Ingram, Parker and their friend, DeAngelo Buckley, were sitting. Two shots hit Ingram and one shot hit Parker. When Ingram stepped out of the car, Wilson shot him a third time. Efforts were made to resuscitate Ingram, but he died at the scene. After the shooting, Wilson ran back to Wash's car and Wash drove him back to his car. At Wilson's request, Wash kept the shotgun and later hid it in the woods near his house.

¶3.    In his first statement to law-enforcement officials following his arrest, Wilson admitted to firing the shots that had injured Parker and killed Ingram. The next day, Wilson's gun was recovered. Wilson acknowledged ownership of the gun in a second statement given a few days later. Almost eight months later, in a statement initiated by Wilson, he again admitted to firing the shots that had injured Parker and killed Ingram. All three statements made to law-enforcement officials were admitted into evidence at trial.

2

¶4.	Wilson was convicted of one count of aggravated assault for shooting Parker and one count of murder for killing Ingram.  He was sentenced to serve consecutive prison terms of ten years and life for his respective convictions.  Wilson appeals from his convictions, raising only two issues.  He alleges the trial court erred by 1) sustaining the State's relevance objections during his attorney's cross-examination of Shamika Parker and 2) admitting into evidence his first two statements to law-enforcement officials.

## LAW AND ANALYSIS

**I.	Did the trial court err by sustaining the State's relevance objections during Wilson's cross-examination of Shamika Parker?**

¶5.	A trial court's exclusion of evidence is reviewed for an abuse of discretion.  ***Beal v. State***, 86 So. 3d 887, 893-94 (Miss. 2012).  A conviction will not be reversed based on the improper exclusion of evidence unless the exclusion results "in prejudice and harm." ***Jackson v. State***, 594 So. 2d 20, 25 (Miss. 1992).  If improperly excluded evidence comes in by another means, the exclusion error is rendered harmless.  *See **Holland v. State***, 705 So. 2d 307, 344 (Miss. 1997); *see also **Jackson v. State***, 594 So. 2d 20, 25 (Miss. 1992).

¶6.	On cross-examination, Wilson's attorney asked Parker if she knew that at the time of the shooting Wilson's niece was 1) fifteen years old[1] and 2) pregnant with Josh Ingram's child.  The State objected to both questions on the ground of relevance, and the trial court sustained both objections.  The State does not dispute that the trial court erred in sustaining

---

[1]During his testimony and in his brief, Wilson stated his niece was thirteen at the time of the shooting.

the objections, but the parties dispute the effect of the alleged error. Wilson argues the error requires reversal, while the State claims the error was harmless.

¶7. The testimony Wilson was attempting to introduce through the cross-examination of Parker related to Wilson's motives for confronting Ingram. The probative value of such testimony was minimal at best, and this Court repeatedly has held that "the trial court possesses a vast amount of discretion" when considering questions concerning the admission and relevance of evidence. *Beal*, 86 So. 3d at 893-94. With this standard in mind, we cannot find that the trial court abused its discretion in sustaining the State's objections. But even if it were found to be error – as the State concedes – it did not "prejudice and harm" Wilson because the testimony excluded during Parker's cross-examination subsequently came in through the testimony of Justin Wash and Wilson.

¶8. Wash's and Wilson's testimony established that Wilson initially confronted Ingram because Ingram had impregnated Wilson's niece. Wash stated that Wilson told him that "[he and Ingram] had got to fighting, that [Ingram] had gotten his niece pregnant or whatever, and [Wilson] went down there to ask [Ingram] about taking care of the baby, and they got into it . . . ." Similarly Wilson was allowed to testify that "[his] little niece had got pregnant by [Ingram] . . . [when] [s]he ain't but thirteen" and that on March 24, 2008, he "seen Josh in Hillsboro, and by me being a man, and asking him to hold up, excuse me, to be a man, and he already done messed up. He had got my little niece pregnant and I was trying to talk to him as a man, and he went to calling her all kind of names, so I got kinda mad, and I struck him . . . ." With this testimony, the jury was fully informed that Wilson had confronted Ingram because Ingram had impregnated his young niece. Even if the trial

4

court's exclusion of the same testimony from Parker was deemed to be error, it clearly was harmless, as it did not result in "prejudice and harm" to Wilson because the same testimony came before the jury through other witnesses.

**II. Did the trial court err by admitting Wilson's first two statements to law-enforcement officials into evidence?**

¶9. Wilson made three statements to law-enforcement officers regarding the shooting of Ingram and Parker. All three were admitted into evidence. Wilson argues that the first two were admitted erroneously because the State failed to prove beyond a reasonable doubt that they were given voluntarily.

¶10. If a defendant challenges the voluntariness of a statement, the trial court must conduct a suppression hearing outside the presence of the jury to determine the statement's admissibility. *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966); *see also **Harden v. State***, 59 So. 3d 594, 605 (Miss. 2011). The State has the burden to prove beyond a reasonable doubt that a statement was voluntary. *Agee* 185 So. 2d at 673. In order to be voluntary, a statement "must have been freely given and must not be the product of coercion by threats, promises, or inducements." ***Harden***, 59 So. 3d at 605. A prima facie case of "[v]oluntariness may be established through testimony from officers or those who may have specific knowledge of the facts that the confession was made without any threats, offers of reward, or coercion." ***Id.*** If a defendant rebuts the prima facie case of voluntariness with contrary evidence, the State is required to "offer the testimony of all officers who witnessed the confession, or give an adequate reason for their absence. This Court will reverse the denial of a motion to

5

suppress only if the trial court's ruling constituted manifest error or was against the overwhelming weight of the evidence." *Id.*

¶11.    As required by *Agee*, the trial court held a suppression hearing outside the jury's presence to determine the admissibility of Wilson's first two statements. At the hearing, Officer Willie Anderson and Officer Billy Patrick, the only two officers who witnessed Wilson's statements, testified for the State. They swore that no promises or threats had been made to Wilson to secure either statement and that Wilson had signed both statements after being given an opportunity to review them for errors. They also testified that, before giving each statement, Wilson was read his *Miranda*[2] rights and waived those rights both orally and by signing a waiver form. Wilson claimed he gave his first statement only because Officer Anderson had threatened to lock up his girlfriend and to put his children with the Department of Human Services (DHS) unless he told the truth.[3] During his testimony, Officer Anderson acknowledged that the Department of Human Services may have been discussed with Wilson and his girlfriend, since the couple had minor children and both parents were in custody. However, Officer Anderson explicitly denied threatening to turn the couple's children over to DHS in order to obtain their statements. Wilson did not allege that any threats were made in connection with his second statement. The trial court found that both of Wilson's challenged statements were voluntarily given and admissible. The State satisfied all its

___

[2]*Miranda v. Arizona*, 384 U.S. 436, 86 S. C. 1602, 16 L. Ed 2d 694 (1966).

[3] Wilson's girlfriend, Shawanda Patrick, testified that Officer Anderson also secured a statement from her by threatening to put her children with the Department of Human Services, but she admitted that she did not have an opportunity to tell Wilson about the threat because they were held and questioned separately. Neither party attempted to enter Shawanda Patrick's statement into evidence.

6

procedural and evidentiary requirements at the suppression hearing, and the trial court's decision to admit the statements was not against the overwhelming weight of the evidence. Therefore, this issue is without merit.

## CONCLUSION

¶12. Wilson was convicted of one count of aggravated assault and one count of murder. Wilson's contention that his convictions must be reversed because the trial court improperly excluded testimony from Shamika Parker is without merit. The error, if any, was harmless, because the excluded testimony came in through the testimony of Justin Wash and Wilson. Similarly, Wilson's contention that two of his statements to law-enforcement officials were admitted improperly also is without merit. The trial court properly conducted a suppression hearing, and its determination that the statements were given voluntarily was not against the overwhelming weight of the evidence. Therefore, Wilson's convictions and sentences are affirmed.

¶13. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCE IMPOSED IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT I.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**